# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

AIRTRAN AIRWAYS, INC.,

    Plaintiff/Counter-defendant,

v.

CITY OF CHICAGO,

    Defendant/Counter-plaintiff.

No. 03 C 4685
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The summary judgment motion at issue here is intended to resolve what, in the particular context of this case, is a threshold issue. The resolution of this issue may simplify the rest of the proceedings. The incident at the heart of the litigation is straightforward. AirTran operates an airline. One of its Boeing 727 aircrafts, operated by Sharp Aviation, collided with a tug operated by AirTran and escorted by the City. AirTran thought it had suffered a property damage tort and sued the City, claiming negligence.

In the lease which allowed AirTran to use Midway Airport, the City demanded and received a provision that indemnifies the City against "any and all loss" arising from the City's negligence with respect to the airline's use of Midway. I decided earlier in this case that this provision effectively extinguished any tort claim. But AirTran also filed a breach of contract claim and the City countered with four counts of its own. The City seeks the cost of defending the suit as damages.[1] To the extent that these damages arise from defense of the negligence

---

[1] The grounds for the counterclaim are AirTran's alleged failures to: (1) require Sharp, its subcontractor, to carry insurance naming the City as an additional insured; (2) name the City as an additional insured on one of AirTran's own policies; (3) comply with the indemnity provision; and (4) train and supervise its own employees on towing aircraft.

claim, I have previously said the City would be entitled to recover its costs under the indemnity agreement. At issue now are the costs of defending against the breach of contract claim made by AirTran.

The indemnity provision, set out in my June 27, 2006 opinion, is quite broad. The issue currently before me is whether it applies to the City's defense of a suit by AirTran alleging that the City violated the contract between them. The City's position is that, even if it did breach the lease and caused damage to AirTran, and even if AirTran could sue the City and win, there would be no laurels for this victory. The City argues that the indemnification provision of the lease would require AirTran to return to the City any amounts it had to pay for its breach. In addition, the City argues that AirTran would have to pay the costs of the unsuccessful defense. This is fairly said to be an exceptionally stringent result, one that might even violate public policy. There would be a contract binding on both parties, but only one could be compensated for a breach. If I were to adopt the City's view, the City could breach the contract with impunity. Literally read, the indemnity provision would, for example, require AirTran to refrain from enforcing an injunction requiring the City to abide by the contract. The City does not seriously dispute the toughness of the terms. It says that airlines need landing rights and spaces at Chicago's airports and they are willing to agree to anything in order to get them.

This question is governed by Illinois law and, for now, I assume that this is a lawsuit between the City and AirTran and disregard the presence of Sharp Aviation. Illinois law recognizes that there is no common law right to recover attorneys' fees in breach of contract cases. *Installco, Inc. v. Whiting Corp.*, 784 N.E.2d 312, 321 (Ill. App. Ct. 2002). Also, as befits a State which developed most of its jurisprudence by common law methods, Illinois law does not

favor indemnification agreements and construes them strictly against indemnities. *See Church v. General Motors Corp.*, 74 F.3d 795, 799 (7th Cir. 1996). Nevertheless, construction still depends on the intent of the parties and an evaluation of meaning in light of the context and language of the agreement as a whole. *See Higgins v. Kleronomos*, 459 N.E.2d 1048, 1051 (Ill. App. Ct. 1984). In addition, there is no *per se* rule against fee-shifting agreements which apply to contract claims. *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

Without question, the lease agreement imposes duties upon the City. The City must keep in good repair all areas of the airport, operate and maintain it in a reasonably prudent manner in compliance with federal, state and municipal dictates and not, by its own actions, reduce the capacity of the airport to handle cargo and commercial air service. All of these duties relate to AirTran's rights to operate its aircraft, i.e., take-off, land, load, unload, tow and park in aircraft parking positions. These duties and the related rights are, obviously, not trivial, and it is inconceivable that *both* parties intended that there would be no remedy for the City's breach. I do not mean to say that it would be impossible to draft a contract providing no remedy for breach by one party (although it might raise issues of mutuality of obligation). That said, the language of such a contract would have to be far clearer than the language at issue here in order to be found to represent the intent of both parties.

In general, one party's material breach usually excuses the other party from its own obligations under the contract. *See Elda Arnhold and Byzantio, L.L.C. v. Ocean Atlantic Woodland, Corp.*, 284 F.3d 693, 700 (7th Cir. 2002). In this case, both parties may argue that the other was the first to breach. The City says that AirTran was the first to breach because when it

3

contracted with Sharp Aviation to operate its airplane, it did not make certain that Sharp or AirTran carried insurance which would have covered the City's costs here as an additional insured. This obligation unquestionably does exist under the lease.

On the other hand, assuming *arguendo* that the City did breach the contract, AirTran will assert that the City was the first to breach. If that is, in fact, the case, it could render even the most stringent indemnity provisions unenforceable in most cases. At bottom, though, I do not think that the law covering breach and excuse of performance by the other party can be applied on this record. To the extent that this case requires resolution of these issues, summary judgment is not the appropriate vehicle to do so.

I do not read the contract to impose on AirTran the duty to indemnify the City for claims of breach of contract made by AirTran against the City.[2] I do not, therefore, address the argument that indemnification would not apply, in any event, to a case in which two parties claim a breach against the City.

The City does not rely all that heavily on the indemnification provision here. Its principal argument, rather, is that AirTran's claim is a tort claim, not a breach of contract claim no matter

---

[2]The City says that it does not argue that there is no set of circumstances in which it would lose the right to indemnification. It claims the indemnification applies only to liability resulting from injury to persons and damage or destruction to any property. But the language they rely upon is the language of inclusion not exclusion. The clause in question refers to indemnification "for any and all loss, liability . . . damages of whatever nature . . . judgments, injunctive relief, awards . . . including, without limitation, payments of claims . . . resulting from the injury or death of any person or damage or destruction of property . . ." The City's reading is incorrect, and even accepting the City's reading would mean that neither party's intent was embodied in the language.

The City makes the factual assertion that the City had all the leverage in the negotiations because airport usage rights are a rare commodity in Chicago, and AirTran would have agreed to anything. I accept this as true. The only issue here is how to read the indemnification provision.

4

how it is titled. The City says this case involved a collision caused by a City driver which caused damage to AirTran's plane (and attendant loss of revenue when the plane was taken out of service), which is a tort no matter how the case is styled.

Whether a claimed wrong is a tort or a breach of contract is an ancient issue. Torts are civil wrongs defined by common law and statute. *See FDIC v. Citizen's Bank*, 592 F.2d 364, 369 (7th Cir. 1979) (holding that liability for breach of duty imposed by statute or case law and not by contract is in tort). Breaches of contract are actions that are wrongful because the contract prohibits them. One way courts have drawn the dividing line is to say that when compliance with a contract cannot be measured by the terms of the contract, e.g. "driver shall operate the vehicle safely and with due care," the measure is provided by tort law. *See Lewis v. Methodist Hospital, Inc.* 326 F.3d 851, 854 (7th Cir. 2003). Where the standard of care is defined by the express terms of a contract, then damages for failure to meet the standard of care are recovered by breach of contract. *See Rexnord Corp. v. DeWolff Boberg & Assoc.*, 286 F.3d 1001, 1005 (7th Cir. 2002).

In this case, the contract does not define the standard of care covering the procedures such as the one at issue here. What AirTran has is very general language roughly stating that the City is supposed to operate the airport as safely as possible and in compliance with federal regulation. Federal regulation does govern planes moving on the ground, and it does refer to escort vehicles with two-way radios as a method of controlling any vehicle without a radio. The AirTran plane did, of course, have a radio. It also had an escort vehicle that had, as required, a two-way radio of its own. The driver of the escort had obtained, as required by regulation, clearance to enter the movement area. The city-employed driver of the escort did a poor job, but the duties of that

5

driver did not arise from contract (which does not cover the subject of escorts), they arose by operation of law. And even that law does not specify any particular standard of care because that standard is defined by long-standing case law governing negligent torts.

AirTran's response to this reasoning is to argue that courts have permitted breach of contract claims that might also have been brought in tort. AirTran relies principally upon *Mutual Serv. Casualty Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001); and *Northrop Corp. v. Crouch-Walker, Inc.*, 529 N.E.2d 784 (Ill. App. Ct. 1988).

Illinois courts have long recognized that the same set of facts can support claims under both contract and tort principles. *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 982 (Ill. 1981) ("[A] contractual relationship may give rise to an action for breach of contract or an action in tort."); *Sabath v. Mansfield*, 377 N.E.2d 161, 167 (Ill. App. Ct. 1978) ("There is . . . nothing wrong in pursuing a claim for [contract and tort] where the defendant in breaching the contract has also negligently, willfully or fraudulently violated some duty owed the plaintiff and arising out of the contract."); *Ledingham v. Blue Cross Plan for Hosp. Care of Hosp. Serv. Corp.*, 330 N.E.2d 540, 544 (Ill. App. Ct. 1975) ("It is clear in Illinois that where both a tort and a contract cause of action arise out of the same fact situation, the plaintiff is free to proceed with the theory of his choice."), *rev'd on other grounds*, 356 N.E.2d 75 (Ill. 1976); *Stanley v. Chastek*, 180 N.E.2d 512, 519 (Ill. App. Ct. 1962) (holding that plaintiff may recover in either tort or contract for breach of contractual duty).

I conclude that AirTran properly pled its claim as a breach of contract. Accordingly, AirTran's motion for partial summary judgment is granted. As I suggested in my June 27, 2006 ruling, irrespective of the ultimate outcome of its counterclaims, the City will not be entitled to recover any fees beyond the reasonable costs and fees accumulated in the defense of AirTran's earlier-dismissed negligence claim.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 19, 2007